ALBANY,
October, 1830.

Hosack
v.
College of
Physicians of
New-York.

---

## HOSACK *vs.* THE COLLEGE OF PHYSICIANS AND SURGEONS IN THE CITY OF NEW-YORK.

The *regents of the university* have the power to regulate the compensation of the *professors* in the college of physicians and surgeons in the city of New-York ; they may direct all the fees received to be paid into the treasury of the college and a fixed salary to be paid to the professors. In the absence of agreement or regulation on the subject, each professor is entitled to the fees which he may receive from those who attend his lectures.

Certificates of indebtedness given by the treasurer and registrar of the college in pursuance of a resolution passed at a meeting of the trustees of the college, not being an *anniversary* or *quarterly* meeting, are not binding upon the college ; but where debts thus certified were subsequently recognized in the annual reports of the trustees to the regents of the university, *it was held* that such recognition was *prima facie* sufficient to entitle the holders of such certificates to recover, although it appeared that the holders were trustees of the college, and constituted a majority of the meetings at which such annual reports were prepared ; there being no evidence impeaching the fairness of the transaction.

THIS was an action of assumpsit, tried at the New-York circuit, in October, 1828, before the Hon. OGDEN EDWARDS, one of the circuit judges.

ALBANY,
October, 1830.

Hosack
v.
College of
Physicians of
New-York.

The declaration contained the common money counts and a count upon an *account stated ;* the defendants pleaded the general issue and gave notice of set off. On the trial the plaintiff gave in evidence *ten* certificates, signed by the treasurer and registrar of the college of various dates between 4th December, 1817, and 8th April, 1820, certifying certain sums of money, amounting, together, to $1911,48, to be due to the plaintiff, and to be payable out of the funds of the college of physicians and surgeons in the city of New-York, with lawful interest on the same from the date of the certificates. These certificates were objected to as competent evidence, but admitted, subject *to all* exceptions. They were given in pursuance of a resolution adopted, at what was stated to be an *adjourned quarterly meeting* of the trustees of the college, held on *Wednesday* the fourth day of *December*, 1817, whereby after reciting that the *professors* in the college had at different times made advances to the college of sums of money at lawful interest, for the purpose of aiding the treasury of the same, and that it might be necessary thereafter for additional sums to be loaned the college in a similar manner by the professors of the same, it was *resolved* that the treasurer of the college deliver to each professor a certificate of such sum as might be due to him for monies advanced to the college, with the interest thereon ; and the treasurer was further empowered thereafter to give similar certificates for advances subsequently to be made by the professors ; the form of the certificate was prescribed, and it was required to be attested by the registrar. At the time of the adoption of this resolution the board of trustees consisted of the number of *fourteen* members, who were all resident in the city of New-York. The meeting of the 4th December, 1817, consisted of only *seven* trustees, *six* of whom were *professors* in the college, and the plaintiff was one of them. Subsequent to the giving of the certificates, the several amounts claimed by the plaintiff were included, and mentioned as *debts* owing by the college in the accounts of the treasurer annexed to the annual reports, made subsequent to the giving of the certificates, by the trustees of the college under the seal thereof to the regents of the university ; the *professors* of the college

being a majority of the trustees present at the different meetings when the reports were agreed upon.

ALBANY,
October, 1830.

Hosack
v.
College of
Physicians of
New-York.

On the part of the defendants it was shewn, that by the *charter* of the college a *majority* of the whole number of trustees resident in the city of New-York is necessary to constitute a quorum for the transaction of business; that the trustees are required to meet on the first Tuesdays of May, August, November and February in each year; that on the days of the *anniversary* and *quarterly* meetings, *but at no other time*, they may enact such by-laws, rules and regulations relative to the affairs and property of the college, and relative to the duties of their president, vice-president, professors, treasurer, registrar and other members, as they or a majority of them so met at such *annual* or *quarterly meetings* may think fit and proper; meetings of the trustees for the transaction of *ordinary* business may be convened by giving to each trustee in the city three days notice, and five of the trustees so met (of which the president, vice-president or senior professor always to be one) are declared to be a quorum. The defendants then gave in evidence an *annual report* of the trustees of the college to the regents of the university, dated 30th January, 1815, in which, among other things, it was stated that the professors had contributed their *graduation fees*, by which expedient, it was added, the revenue had been found adequate to the payment of the interest accruing on a debt owing by the college and to the necessary and contingent expenses. The defendants also gave in evidence a resolution of the regents of the university of the 22d March, 1820, fixing the *graduation fee* at $25, one fifth to be paid to the president, and the remainder, after deducting the expenses of the commencement and of diplomas, to be equally divided among the professors present at the examination; and another resolution of the regents of the 12th April, 1835, by which, for the purpose of extinguishing the debts of the college, it was ordained that until such debts should be fully satisfied and paid, each of the professors in the college should annually set apart and gratuitously contribute towards the payment of such debts out of the *fees to be received by him for admission* to his public lec-

ALBANY,
October, 1830.

Hosack
v.
College of
Physicians of
New-York.

tures in said college the sum of *ten per cent.* on the yearly amount of such fees over and above the fees paid for matriculation in said college, to be paid to the treasurer of the college. It was admitted that *three* of the certificates given to the plaintiff were for graduation fees, amounting together to the sum of $520,81. The plaintiff was named as a *trustee* in the charter of the college when confirmed in 1812; was a trustee and *professor* in 1817, and in the session of 1825, 6. The defendants claimed to off set *ten per cent.* of the amount of fees received by him in that session. A verdict was taken for the plaintiff for a *nominal amount*, subject to the opinion of this court, upon a case containing the above facts. The cause was argued by

*R. Emmet* and *D. B. Ogden*, for the plaintiff.

*Greene C. Bronson*, (attorney general,) and *P. A. Jay*, for the defendants.

*By the Court*, SUTHERLAND, J. The certificates given in evidence were objected to by the defendants as incompetent evidence, on the ground that the officers by whom they were given acted in this respect without legal competent authority. It was not pretended that it was within the scope of the general powers of the treasurer and registrar to borrow money on the credit of the college, or to bind the defendants by any certificates or admissions which they might think proper to make; but it was contended that they had a special authority in this case, under the resolution of the board of trustees passed on the 4th day of December, 1817. The resolution does in terms vest such authority in them; but it was argued, and I think unanswerably, on the part of the defendants, that the resolution itself was invalid, not having been passed in conformity to the express provisions of the charter. The charter provides that the whole number of trustees shall not at any time exceed 25, and *that a majority of their whole number, at any time resident in the city* of New-York, shall form a quorum for the transaction of business, and shall and may meet together on the first Tuesdays

ALBANY,
October, 1830.

Hosack
v.
College of
Physicians of
New-York.

*in May, August, November* and *February* in every year, and that on the days of these anniversary and quarterly meetings, *but at no other time,* they, the said trustees, may enact *such by-laws, rules and regulations* relative *to the affairs and property of the said college,* and relative to the duties of their president, vice-president, professors, *treasurer, registrar* and other members, as they or a majority of them so met at such *annual* or *quarterly meetings* may think fit and proper, &c.; and such by-laws, rules and regulations having *received the approbation of the regents,* shall not be annulled, &c. without the approbation of the regents. Special meetings of the trustees, for the transaction of *ordinary* business, are authorized to be called by the president, vice-president, or senior professor and any three of the trustees, by giving a written notice of three days to each trustee who shall be in the city of New-York, of the time and place of holding said meeting. At such special meetings, *five* of the trustees may form a quorum. It can admit of very *little question, that the resolution* which we are now considering is either a by-law, rule or regulation within the meaning of the section of the charter to which I have adverted. It relates most emphatically *to the affairs and property* of the college, and *to the duties of two of its officers, the treasurer and registrar.* It was the obvious intention of the framers of the charter, that all the important regulations of the college should be adopted at the stated quarterly meetings. The days on which they were to be held were fixed in the charter, and it was presumed that all the trustees who felt an interest in the prosperity of the institution, and whose residence was not too remote, would consider it their duty to attend those meetings. The *ordinary* business of the college was left under the control of the officers and a limited number of trustees, to be convened by special notice. The power of borrowing money and pledging the credit of the college is certainly one of the most important trusts that can be committed to any of its agents. A delegation of such authority is, not only within the spirit, but within the very terms of the charter *a by-law, rule or regulation relative to the affairs and property of the college and the*

ALBANY,
October, 1830.

Hosack
v.
College of
Physicians of
New-York.

*duties of its officers,* and can be enacted or adopted only at the anniversary or quarterly meetings composed of a majority of the trustees resident in the city of New-York, and must receive the approbation of the regents of the university before it becomes valid and effectual. The meeting at which the resolution in question was passed was not held on the first Tuesday in May, August, November or February; it was not attended by a majority of the trustees resident in the city of New-York, and it does not appear ever to have been sanctioned or confirmed by the regents of the university. A corporation can act only in the mode prescribed by its charter; it is an artificial being and derives all its powers from the act by which it is created; it has no latitude of discretion where its mode of operation is clearly pointed out. *Beatty v.. The Marine Ins. Co.,* 2 *Johns. R.* 108. *The People v. Utica Ins. Co.,* 15 *id.* 383. *New-York Firemen Ins. Co.* v. *Ely,* 2 *Cowen,* 699. 7 *Cowen,* 402. 2 *Cranvh,* 166. 1 *Kyd,* 430. 1 *Strange,* 336. 2 *Burr.* 723.

It is stated in the book of minutes kept by the board, that the resolution was passed at an *adjourned quarterly* meeting; and it was contended that it was competent for a quarterly meeting of trustees when regularly organized on the day fixed in the charter, to adjourn to any other day, and then to transact any business which might be done at a quarterly meeting. If this were conceded, it would not obviate the difficulty in this case; the objections still remain that the meeitng was not composed of a majority of the trustees resident in the city of New-York, and that the resolution never was approved of by the regents. I am of opinion therefore that it conferred no authority upon the treasurer and registrar to bind the corporation by their certificate.

It is to be remarked, that by the terms of the resolution, these certificates are to be given only *to the professors,* and that six out of seven of the trustees who composed the meeting at which the resolution was passed, were the very professors to whom the certificates were directed to be given. I do not think this circumstance would of itself vitiate the proceedings, if they were regular in all other respects; but it obviates all difficulty as to the question how far the acts of

officers *de facto,* under color of legal authority, are binding. The question can arise only where third persons are concerned. The plaintiff and the other professors were parties to this transaction, and can derive no benefit from it if it was illegal or irregular.

It is also to be observed, that the certificates given in this case do not acknowledge the receipt of any money from the plaintiff, but that so much is due to him, payable out of the funds of the college. If admissible, they could only apply to the court on an account stated; and they would not be evidence against the treasurer in an action by the college against him for money had and received.

But, excluding these certificates, I am inclined to think there is no other evidence in the case which is *prima facie* sufficient to entitle the plaintiff to recover. By the charter, it is made the duty of the board of trustees to make an *annual report,* in writing, to the regents of the university, &c. respecting *the funds and property of the college,* and all matters and things relative to the college and the students and professors thereof. The case states, "that it was admitted by the defendants that the several amounts claimed by the plaintiff in this suit were included and mentioned as debts due by the college in the accounts of the treasurer annexed to the annual reports, made subsequent to the giving of the certificates for said amounts respectively, by the trustees of the college, under the seal thereof, to the regents of the university; the professors of said college being a majority of the trustees present at the different meetings when the said reports were agreed upon." We must intend that there was a regular board of trustees when these reports were made; they are to be considered as the acts of the defendants, through their legal representatives; they were made under the seal of the corporation. There can be no question that a board of trustees so constituted had authority to settle and adjust the accounts of the college, and their acts and admissions made under such circumstances are, I think, *prima facie* evidence at least against the defendants. The force of the admission is not affected by the circumstance that the professors constituted a majority of the trustees who composed the meetings at

ALBANY,
October, 1830.

Hosack
v.
College of
Physicians of
New-York.

which the reports were agreed upon. They were constitutional members of the board for all purposes; and from the nature of their connection with the college, it might well have been anticipated that they would be the acting managers of its concerns. The case discloses that six at least of the fourteen trustees resident in the city of New-York, in 1817, were professors of the college; and if they all attended the meetings of the board, as they most probably did, they would always constitute a majority, unless the board was nearly full. Of itself, it affords no ground for suspicion; connected with other circumstances tending to impeach their integrity in the transaction, it might be entitled to considerable weight; but no such circumstances are disclosed in the case, nor is there any ground to suspect that they exist. It must be presumed that the accounts of the treasurer, in which these debts were stated, were duly examined by the trustees before they gave them their sanction by annexing them to and making them a part of their annual reports.

Considering the demand of the plaintiff as *prima facie* established, the next enquiry is as to the set off or deduction claimed by the defendants. It consists 1st. of graduation fees; 2d. of *ten per cent.* upon the yearly amount of fees received by the plaintiff for admission to his public lectures in the college, for the session of 1825-6.

As to the *graduation fees;* it is admitted that $520,81 of the plaintiff's account is composed of graduation fees, which, instead of having been received by him, were appropriated to the use of the college. They accrued in 1817, 18 and 19. The defendants contend that the professors in 1815 voluntarily relinquished to the college all claim which they might otherwise have had to these fees; and they rely upon the annual report made by the trustees to the regents in January, 1815, as containing the evidence of such abandonment. It may fairly be inferred, though there is no express evidence in the case, that the plaintiff was one of the trustees and professors when that report was made. He was named a trustee in the charter in 1812, and there is nothing to show that he ever resigned, or was removed. He must therefore be deemed to have assented to the report, and it is properly

ALBANY,
October, 1830.

Hosack
v.
College of
Physicians of
New-York.

used as evidence against him. The paragraph of the report which is relied upon is as follows : "To aid the finances of the college, the professors *have contributed their graduation fees;* by this expedient the revenue *had* (has) been found adequate to the payment of the interest accruing, and to the necessary and contingent expenses." The first observation to be made upon this paragraph is, that in terms it relates to what had already been done, and not to what they intended to do thereafter. The professors *have* (already) *contributed their* graduation fees. By this expedient the revenue *had been found adequate* to the payment of the interest ; both branches of the sentence relating to antecedent events. The contribution had not only been made, but its effect was stated. The intention of the professors to give their fees to the college for the future, without limitation of time or amount, I do not think can justly be inferred from this re-port. If it was a gratuity, (as we now consider it,) the pro-fessors are entitled to have the language of the report con-strued most favorably for them. It is also the report of the trustees, not of the professors as such.

But conceding that it was intended as a pledge of the graduation fees which might subsequently accrue, as well as of those which had already been appropriated, it was revo-cable at the pleasure of the professors. There does not ap-pear to have been any consideration for the promise which would put it out of their power to revoke it. It must, I think, be considered as revoked by the resolution of the 4th December, 1817, and the proceedings under it. All the professors were parties to that resolution, and three of the certificates given by the treasurer and registrar under it, ac-knowledging the college to be indebted to the plaintiff, were for these very graduation fees. A more distinct declaration on the part of the plaintiff, of his intention to resume these fees, if he had ever intimated or entertained a design to part with them, could not well have been made. It has already been shown that the trustees knew of and ratified the pro-ceedings by making the treasurer's accounts in which the transactions were disclosed a part of their report to the re-gents.

ALBANY,
October, 1830.

Hosack
v.
College of
Physicians of
New-York.

But it was suggested by the counsel for the defendants that all the fees paid by the students belonged to the college, not to the professors, and that the professors were entitled to such compensation only as the college might think proper to allow them. This suggestion is sufficiently answered by the fact, that the whole case shows that it was a conceded point in the transactions of the college, that the graduation fees belonged to the professors. If not, why did they relinquish them, or why did the college accept them at their hands? Whether they belonged to the professors as a part of the compensation agreed to be paid to them by the college, or by virtue of their offices alone, is utterly immaterial. It is manifest that they had always been in the habit of receiving them, either upon the one ground or the other. It appears to me, therefore, that the plaintiff is entitled to recover those as well as the other general items of his account.

The only remaining question is as to the defendants' right to claim by way of off set, *ten per cent.* of the fees received by the plaintiff for admission to his lectures, at the session of 1825–6. This claim is founded upon an ordinance of the regents, passed on the 12th day of April, 1825. By that ordinance it is made the duty of each of the professors to pay to the treasurer of the college ten per cent. on the yearly amount of the fees received by him, for the purpose of creating a fund to be applied to the payment of the debts of the college. The right of the regents to appropriate any part of the fees of the professors in this manner is denied by the plaintiff.

The appointment of the professors as well as the trustees of this college, is expressly reserved by the charter to the regents of the university. Indeed, the charter granted to the college in 1812, was confirmed by the legislature upon the express condition that such right should be retained by the regents. *Act relative to the University,* 2 *R. L.* 262, § 8. Their legal style and title are declared by the charter to be, *Professors of the University of the State of New-York, for the College of Physicians and Surgeons.* They are removeable at the pleasure of the regents, upon one month's notice of such intention being given, either to the board of trustees, or

to the individual intended to be removed. It is made the duty of the trustees of the college to provide suitable lecturing rooms for such professors as the regents might appoint. Nothing is said in the charter as to the manner in which the professors were to be paid. In the absence of all agreement or regulation upon the subject, either express or implied, I should presume each professor would be entitled to the fees which he might receive for attendance upon his lectures; such is believed to be the custom of universities in such cases. But there can be no question that it is competent for the regents to fix the compensation of the professors in such manner as they may think expedient. They can pay them either by a fixed salary, or by fees and perquisites. It is matter of contract, to be determined by the parties. The power of the regents is not restrained in this respect by the law from which they derive their authority. The professors are not bound to serve, if they are dissatisfied either with the mode or the amount of their compensation. The regents might have directed all the fees to have been paid into the treasury of the college, and a fixed salary to have been given to each professor. They had equally the right to direct a portion of such fees to be paid to the college, leaving the residue as the compensation of the professors.

Such a regulation must be prospective only in its operation. If the professors continue to serve after it is made known to them, they must be deemed to have assented to it, and to have agreed to serve on the terms which it prescribes. The defendants are therefore entitled to their allowance by way of off set. But there is no evidence in the case as to the amount of fees received by the plaintiff for attendance upon his course in the session of 1825–6, subsequent to the ordinance. It is impossible, therefore, for the court to determine the amount of the off set which ought to be allowed, and we can only say that the plaintiff is entitled to judgment for $1911,48, with interest on the items composing that sum, deducting ten per cent. from his fees for admission to his lectures in 1825–6.