ALLEN, J., also delivered an opinion for affirmance, differing from the preceding in no material respect except that upon the question of the validity of the certificate, notwithstanding its execution by the cashier only, the learned judge expressed himself as follows:
The first objection taken in this case is, that the plaintiff recovered upon the certificate as a contract, and that it is not a contract obligatory on the defendant.
It is conceded that the defendant is a corporation created by virtue of the general banking law of 1838 (ch. 260, § 7), and the defendant contends that the certificate is not its contract, inasmuch as it is not executed by the banking corporation or association. The 21st section of the act referred to declares that "contracts made by any association, and all notes andbills by them issued and put in circulation as money, shall be signed by the president or vice-president and cashier thereof." The certificate here was signed by no other officer than the cashier, and the defendant's counsel insists that no recovery can, therefore, be had upon it in the hands of an innocent holder for value paid.
There can be no doubt of the correctness of the general position assumed by the counsel, that a corporation or association, created by the statute, derives all its power from the act creating it, and that where its mode of action is prescribed, this mode must be strictly complied with by its officers and agents to render contracts obligatory upon it. The authorities are abundant to this point, and need no particular comment. (Beatty v. Marine Insurance Company, 2 John., 108;Hosack v. College of Physicians, 5 Wend., 547, 552;People v. Utica Insurance Company, 15 John., 358; Ang. Ames on Corp., 278, 279; 2 Kent Com., 177; Head v.Providence Insurance Company, 2 Cranch, 127, 166-169; Bankof United States v. Dandridge, 12 Wheat., 64; Bank ofAugusta v. Earle, 13 Peters, 519; McCullough v. Moss, 5Denio, 567.) But this rule is subject to certain qualifications and exceptions, some of which will be hereafter noticed, so far as they are applicable to the present case. *Page 164 
The first question now is, whether the certificate, the amount of which is sought to be recovered, is a contract within the fair meaning and construction of section 21, just cited. And here it is proper to inquire, in the first place, whether this question has not been already passed upon and decided by the court of highest resort in the State, and if it has, whether the present, acting in no higher capacity, can or ought to disturb a decision upon which the commercial and banking community have based their action for the last thirteen years. In the case of Safford v.Wyckoff, President of the Farmers' Bank of Seneca County (4Hill, 442), the Court of Errors decided that a negotiable draft or bill of exchange in the ordinary form, though issued by an association organized under the general banking law, without the sanction of the Comptroller, will bind the association as in favor of a bona fide indorsee; and this notwithstanding it be signed by the cashier only; that it must be presumed to have been legally issued until the contrary appear. The court say — Senator HOPKINS delivering the opinion (p. 445) — that it is true the 21st section enacts that all contracts, notes and bills by them issued and put in circulation as money, shall be signed by the president or vice-president and cashier, but it leaves the inference that there might be other bills and notes, not issued for circulation as money, that might be payable elsewhere than at the office of the bank issuing them, and might be signed otherwise than is prescribed for paper to be issued for such circulation.
If a bank had a right to draw a draft for any purpose (as it clearly had), the abuse of the right should not prejudice an innocent holder.
"The term `contract' is ordinarily applied to agreements where both parties become obligated. If the word `contract' was intended to include all paper, why was it followed by the clause specifying notes and bills issued for circulation? I do not think the provision was intended to apply to drafts or bills, not intended for circulation as money, drawn in the ordinary course of banking business, for transferring the funds of the bank. If the bank had purchased a bill of exchange, or draft *Page 165 
payable to its order, which it wished to sell again, as it has a right to do, is it reasonable to suppose that it must be indorsed by both president and cashier? And, yet, the indorsing is as much a contract as the drawing of a bill.
"So, also, with respect to certificates of deposit. Such a construction of the law would subject the banks to unnecessary inconvenience and expense. The provision being expressly made applicable to bills and notes issued for circulation as money, leaves the inference that bills of exchange and negotiable paper not intended for such purpose may be issued without the signature of the president or vice-president."
The opinion of Senator HOPKINS was concurred in by Senator BOCKEE, and a majority of the members of the court.
It was said, upon the argument, that the decision in this case was by a small majority, against the opinions of Chancellor WALWORTH and Senator PAIGE, and ought not to be binding upon the present court. It is true, that Chancellor WALWORTH did dissent from the conclusions to which the majority arrived. But, in delivering his opinion, he concedes that the section does not, in fact, include a class of contracts that are never, in fact, made by the association, but which arise by operation of law merely, as in the ordinary case of an implied assumpsit to repay moneys deposited with the bank. "In such case," he says, "the certificate of the cashier or teller, or the entry in the pass-book of the customer, is not a contract; it is onlyevidence of a fact, which might be proved by parol, to raise an implied promise by operation of law." And Senator PAIGE, who delivered an opinion in that case, in accordance with the views of the Chancellor, remarks, in his opinion in Curtis v.Leavitt (15 N.Y., 222), that the opinions of Senators HOPKINS and BOCKEE, in Safford v. Wyckoff, especially since the decision of this court in James v. Patten (2 Seld., 15, 16), must be presumed to have been adopted by a majority of the court, and must be regarded as conclusive — upon the principle ofstare decisis. It appears to me, therefore, that the point which we are discussing has been well settled by the decision of the highest State court; and, to use the words of one of our brethren *Page 166 
in Towle v. Forney (14 N.Y., 429), "we cannot do otherwise than follow it."
But, conceding the question to be open, we are not without authority to support the views expressed in Safford v.Wyckoff upon similar statutes elsewhere enacted. A bank charter provided that all bills, bonds, notes, and every other contract or engagement on behalf of the corporation, should be signed by the president and countersigned by the cashier, "and that the funds of the corporation should in no case be liable for any contract or engagement, unless the same be signed and countersigned as aforesaid." The clause was held to apply only to express contracts, and not to extend to undertakings implied in law; and, accordingly, the bank was made liable on a check signed only by the cashier. The court said: "It was to be hoped that the argument was not intended to reach the case of a deposit of money; and yet, if it proved anything, it proved that no contract in law could be imputed to the bank; that a check, or certificate, was not properly a bond, bill or note, but an acquittance. So, a certificate was only evidence of a deposit with the bank, and with the proper officer who was accustomed to receive such deposits, and deliver an acknowledgment or acquittance thereof." (Mechanics' Bank v. Bank of Columbia, 5Wheat., 326; Ang. Ames, on Corp., 280.)
It is necessarily one of the incidental powers of a cashier or teller to issue certificates of this kind under the 18th section, which confers upon the institution the general powers of banking by discounting bills and by receiving deposits, which is a method of borrowing; and the bank might "undoubtedly give a proper certificate as evidence of the deposit," as was well remarked by one of the judges in delivering his opinion in Curtis v.Leavitt (15 N.Y., 269), and he well adds, "this act might, perhaps, be fairly considered as a necessary incident of the power expressly conferred."
The whole business of a bank is confided, in the first instance, to a board of directors, and they usually confer the power to transact its most important and daily financial operations to their cashier and teller. The cashier is usually *Page 167 
intrusted with all the funds of a bank. He receives directly all moneys and notes. He delivers up all discounted notes on payment. He draws checks and drafts, and in short is the executive officer, through whom and by whom the whole moneyed operations of the bank, in paying or receiving debts or discharging them, is to be conducted. It is his duty to apply the negotiable funds, as well as the money of the bank, to the payment of its debts. In receiving deposits did the Legislature ever contemplate that the depositor must wait for the president or vice-president to sign with the cashier a mere certificate or acknowledgment of the receipt of the money by the cashier? The answer to this question is, to me, plain and conclusive. The power to receive must be a power to acknowledge the reception; and one follows as a necessary incident of the other.
It has been held in Illinois and North Carolina, under similar statutes, that the receipt of the cashier alone is evidence of a deposit so as to charge the bank. (State Bank v. Kain, 1Breese, Ill., 45; State Bank v. Locke, 4 Dev., N.C.,
533.)
It is argued by the defendant's counsel, that this is the case of an express contract, and that the instrument was sought to be recovered upon as such, and that, although the provision may not extend to obligations implied by law where the defendant would be liable on an implied contract for moneys deposited with it; yet where an express contract made by the corporation and not created by operation of law is relied on, it must be made in the mode prescribed by statute. To this it may be answered: First. That the complaint does not set out a contract unless the very terms of the certificate make it such. It merely avers the making and transfer of the certificate by which the defendant certified (or acknowledged), through its cashier, the receipt of $5,000 on deposit by F. Hollister to his credit, and demands payment. It has already, I think, been satisfactorily shown that the certificate is merely evidence of the fact of deposit, and that the cashier or teller had the power to issue such receipt or certificate. There can be no doubt but that the money, if deposited, *Page 168 
could have been recovered either with or without such certificate. All the cases — and the counsel — agree in this. But it is said, in the present case, no money was actually deposited. What difference does that make, so far as an innocent purchaser of the certificate for value is concerned? He has a right to presume that a certificate, signed by a bank officer in his official character, is correct; and to act accordingly. If he acts with knowledge or under circumstances so suspicious as to require him to put himself on his guard, the question is then presented under a different aspect. But until then a bona fide
holder is in the same position as an innocent depositor, who could recover his money without any certificate at all, on parol proof of the deposit.
2. And this leads us very naturally to another view of this subject, and that is:
Supposing that the act of issuing the certificate alone, was not authorized by the act of 1838, and that it falls within the provisions of section 21. The certificate was a negotiable instrument: such an one as the bank, through the cashier and teller, and most frequently through the latter, had been in the daily habit of issuing, and their acts were daily recognized by the president and directors in their official intercourse with the bank. A book for the names of depositors and the amounts and certificates thus issued was kept, and although it appears from that book that no entry of this particular certificate was made, yet that does not concern a holder for value, who is not supposed to know of the delinquencies or neglect of bank officers, as among themselves or within the walls of their own building.
It is sufficient for a purchaser for value, without notice, that the certificate is fair upon its face; and the law protects him in his rights. It was not for the purchaser in this case to inquire, in the absence of all circumstances calling for such inquiry, whether the money had been actually deposited or not, nor does it seem to be required by good faith or justice, on the part of the defendant, as the evidence shows that the whole amount of the proceeds of the certificate was deposited *Page 169 
to the credit of the plaintiff, deducting the amount which the parties agreed upon at the time of the sale. If the section extended to such paper, it was undoubtedly for the benefit and protection of the bank; and if it sees fit to waive a formality, and dispense with the signature of any other officer to the certificate of a deposit, it may do so; and the strongest proof of confidence in the integrity of a cashier or teller is the intrusting him, or them, with all the moneyed transactions of the bank, and holding them out to the world as fit agents to be intrusted, by receiving and paying, from time to time, their certificates of deposit.
Such is the practice of all banks at the present day, so far as my information extends. I know of no case, occurring in all the numerous banks of this State, where these instruments are executed in any other form than the one we are now considering. They are negotiated and acted upon in good faith every day; and the institutions issuing them should be bound by their contents, except in cases of fraud. They are, probably, thus issued upon the principle of stare decisis, established, as I have remarked, in Safford v. Wyckoff; but, whether so or not, millions of property are constantly afloat in the shape of these certificates, which the banks ought not to be permitted to repudiate, and thus take advantage of their own wrong, even against an innocent third party.
If any bank chooses to depart from its general course of business, it is, without doubt, at liberty to do so; but, in such case, it is incumbent on it to show that it has interposed a restriction, and that it is known to those with whom it is in the habit of doing business.
The remainder of the learned judge's opinion corresponded so nearly to that of COMSTOCK, J., as to render a further report of it unnecessary.
JOHNSON, Ch. J., did not sit in the case; STRONG, J., put his judgment upon the grounds stated by ALLEN, J.; DENIO and GROVER, Js., dissented,
Judgment affirmed. *Page 170