NicholsoN, C. J.,
delivered the opinion of the Court.
The Memphis Gayoso Gas Co. sued the City of Memphis in the First Circuit Court of Shelby county, and declared on a subscription of ten thousand dollars ($10,000) by the City in the stock of the Memphis Gayoso Gas Co. The defendant pleaded nil debit, and a special plea of set-off, which latter plea it is not necessary further to notice. On the trial of the cause at the January Term, 1871, the jury found a verdict for the plaintiff, and judgment was rendered for seven thousand dollars ($7,000), from which defendant has appealed in error.
The first and main question in the case arises upon, the refusal of the Circuit Judge to charge as follows:
“Neither the Mayor of the City of Memphis, nor the Board of Mayor and Aldermen, nor any officer,, or person, had authority to subscribe for shares of the capital stock of the plaintiff, so as to bind the City of Memphis thereby; and any subscription to the said capital stock that may have been made in the name of the City of Memphis is void, and the plaintiff can not maintain an action against the City of Memphis thereon.”
*533 It is insisted for the City of Memphis that it was •error in the Circuit Judge to decline to give this instruction in charge to the jury.
It is conceded that the procuring and furnishing •of light to the City, by means of gas, are legitimate •corporation purposes, expressly recognized and authorized by the charter of incorporation. It is also con-ceded that it is a legitimate exercise of the corporate powers to purchase gas for the use of the City from •any company that may have it for sale, or, in the •discretion of the City, to erect the necessary works •and manufacture gas for its own use and that of the citizens.
But it is contended that there is no power, either express or implied, under which the Mayor and Aldermen were authorized to make the City a stockholder by subscribing for stock in a private company incorporated for thé manufacture of gas for profit.
There can be no controversy at this day, as to the soundness of the general principle, that a corporation is the creature of the law, possessing no power -or authority except such as is expressly granted by •the charter, or as is necessarily implied. Whenever •the legality of an act or contract of a corporation is brought into question,' it must be determined by subjecting it the test of this principle. While the general principle is plain, its application frequently becomes a matter of serious difficulty.
It is contended by the counsel for the City that the question now under consideration is conclusively settled by the opinion of this Court in the case of *534 Cook & Steadman v. The Sumner Spinning and Manufacturing Co., 1 Sneed, 714. In that case the Corporation of Gallatin subscribed for ten thousand dollars of stock in the Spinning and Manufacturing Company,, located in the town, and delivered its bonds for $5,000 to the Company, who passed them to the undertakers, of the buildings in payment for their work. When suit was brought on the bonds, payment was resisted on the ground that the charter of the town conferred on the Mayor and Aldermen no power to make the-subscription. It was conceded that if there was any such power in the charter it was to be implied from the express power “to lay and collect taxes.” Judge McKinney, after laying down the general principle already stated, remarked: “And the simple statement of this principle would seem to be sufficient for the decision of the question .before us. No argument can. be necessary to show that the authority to purchase stock in a manufacturing company, or to issue bonds, for the payment thereof, can not be derived from the-power of taxation conferred by the charter.” “In ascertaining the extent of the power ‘to lay and' collect taxes’ delegated to the Corporation, we must look to the general powers specifically granted, and such as result from necessary implication to the various objects contemplated by the charter, and the duties enjoined therein; and as far as the proper exercise of these powers, and the accomplishment andi performance of these various objects and duties may require, but no farther, may the power to raise money by taxation be exercised under the charter.”
*535 As there was nothing in the charter of Gallatin which looked to a cotton and woolen manufactory as. one of the objects of the incorporation, or as connected with any of its specific objects, there was no-difficulty in the application of the general rule in holding that the subscription of the stock and the bonds issued were null and void.
In that case Judge McKinney waived any discussion of the question, What is “a corporation purpose” in the proper sense of our Constitution and laws? It was enough for that case that manufacturing cotton and wool was not a corporation purpose, either by express specification in the charter or by necessary implication.
The principle decided by that case, therefore, is,, that a municipal corporation has no power to subscribe for stock in a private corporation, whose object is to make profit by manufacturing goods, wholly disconnected with the objects for which the municipal corporation was created. The other authorities to-which we have been referred do no more than recognize and sustain the general principle so clearly stated in the opinion of Judge McKinney.
Wé do not understand the counsel for the Gas-Company to controvert the correctness of this general rule referred to, but to insist that it is not applicable to the facts of the present case. They refer to-the charter of the City of Memphis to show that authority is therein given to provide for lighting the-streets, and the doing all things necessary to accomplish that object. Also, that power is therein given, *536 to light the streets, to purchase and hold real estate for gas works, and to do all things a natural person might do touching the same.
These references to the charter of Memphis show clearly that the lighting of the City with gas is therein recognized, in express terms, as a corporation purpose. This conclusion is not controverted by the counsel for the City, but he maintains that this corporation purpose can only be accomplished by buying the gas ready made by some other manufacturer, or by the City becoming its own manufacturer of gas. It is admitted that either under the express or the implied powers conferred upon the Corporation, it can legally either buy or manufacture a supply of gas; but it is said that whenever the corporation undertakes to procure its gas by embarking as a stockholder in a company whose business is,.to make gas for sale and for profit, in so subscribing for stock the Corporation transcends its powers, and the subscription is a nullity.
The conclusiveness of this reasoning would at once be conceded, but for the fact that gas, unlike cotton •and woolen goods, is a manufactured article which is expressly looked to in the charter of the City as at least convenient, if not necessary, in carrying out one of the express objects of its creation. The preservation and protection of the lives and property' of the citizens of a city are leading objects for which a charter- is granted, and the charter of Memphis distinctly recognizes the use of gas in furnishing light as a legitimate mode of effectuating these objects. There is no express power in the charter to buy gas with *537 which to light the City, nor any express power to erect works and manufacture it, but if the agents of the Corporation regard either of these modes of getting a supply of gas as necessary and proper, they have the implied power so to procure a supply. This, as we understand the argument, is not' controverted.
But suppose the Corporation lacks the credit, or the ready means, to erect gasworks and manufacture the article; and suppose there is no enterprising company ready to embark in the manufacture of gas for sale. In this state of things it is proposed to the Corporation that if the City will agree to become a stockholder for $10,000, other individuals will subscribe the balance of the stock, and by that means the City can procure a supply of gas. Would the Corporation transcend its legitimate powers by thus uniting its capital or its credit with individual stockholders, and thereby effectuate a clear corporate purpose, which could not be otherwise attained? Let it be conceded that the individual stockholders embark in the enterprise for profit, or for a, speculation, can that fact make it unlawful for the Corporation to embark in it to insure the means of accomplishing a corporate purpose?
In the case of Nichol v. Mayor, etc,., of Nashville, 9 Hum., 270, Judge Turley said: “ Tf a corporation may make the road, may it not join with others to make it? If the undertaking be too expensive to be carried into execution by the corporation itself, or if others be desirous of uniting with it for the effectuating of the design, why may they not unite? Again, *538 it may be asked, is there any thing wrong in this? Is there any thing against the public; good in this? Is there any thing against law in this? Surely not?”
In like manner, we may ask why it is that, if a corporation has not money or .credit enough, to erect works and make gas, which it could lawfully do, it may not use the money or credit it has to enable a company to form and manufacture gas? Does the charter authorize the Corporation to use money or credit enough to build gas works entire, and yet has it not power to use enough of its money or credit to build them in part, or to aid others in building them? Is. it less lawful to get gas by contributing part of the means necessary to produce it, than to contribute the whole? There can be but one answer to these questions.
Whenever the lighting of the City with gas is found to be a corporation purpose, then upon the strictest construction of the powers of corpora ion.-, every thing necessary and proper for carrying into execution the granted powers, may be lawfully resorted to. But, in the present case, the charter empowers the City “to purchase and hold real estate for gas works, and to do all things a natural person might do touching the same.” And, without looking to this express grant of power, it is laid down in 2 Kent, 278 (note), that “to attain its legitimate object, a corporation may deal precisely as an individual who seeks to accomplish the same end.” Surely, then, there is nothing in the charter of the City which forbids the corporation to carry out the object of jiro-, *539 curing gas to light it by subscribing stock in a company which agrees to furnish gas at half price. We conclude that the Circuit Judge was in no error in declining to give the instruction asked for.
It is next insisted, for the City of Memphis, that if the corporation had the power to make a valid subscription of stock in the Gas Company, yet that the power was not so exercised as to be obligatory on the city. Various instructions were asked for in: reference to this brancli of the case which the court-declined to give as asked for, but charged in general terms, covering the several propositions submitted. To determine whether his charge was erroneous or ' not, it is necessary to recur briefly to the facts proven on the trial.
It appears from the records of the City of Memphis that on the 16th of December, 1866, a resolution was introduced' before the Board of Aldermen proposing to take stock in the Memphis Gayoso Gas Co. This resolution was referred to a standing committee who reported, at a subsequent meeting on the-loth of January, 1867, as follows:
“We recommend that the City subscribe ten thousand dollars, provided the Company agree to furnish gas at one-half, the price paid, for the use of the City.” This report was adopted, and thereupon the-President of the Gas Company, being present, accepted the offer of the subscription, and so orally notified the Board of Aldermen while in session.
It appears further that the President of the Gas Company soon thereafter had the City of Memphis en *540 tered on the stock book of the Gas Company as a stockholder to the amount of $10,000.
It appeared also that on the 30th of October, 1867, tne City of Memphis paid on its stock to the Gas Co. $1,000, and on the 1st of December, 1869, it paid $2,000, which payments appeared regularly entered on the proper books of both Corporations. And on the 12th of July, 1870, the President of the Gas Co. published a call on the stockholders to- pay the balance of their stock on or before the 1st of August, 1871, which call was made in pursuance of an order of the Board of Directors. The City of Memphis refused to pay, whereupon this suit was instituted.
Upon these facts the counsel for the City, in several distinct propositions, asked the court below to instruct the jury to the effect that the subscription of stock was not complete and binding on the City. The court refused to so instruct them, but left the facts to the jury, from which they were to determine whether the Gas Co. had accepted the subscription or not. On this branch of the case the court told the jury that “the adoption of the resolution by the Board of Mayor and Aldermen was equivalent to an offer to take that amount ($10,000) of stock in plaintiff’s Company, upon the conditions therein specified; and if the proof satisfies you that the plaintiff did accept the proposition, your verdict will be for the plaintiff upon this point. The acceptance may be shown by proof that plaintiff collected a part of the subscription from defendants without defendants having then executed a contract under the proviso, or that they *541 delivered to defendants a contract in accordance with the proviso. If you find no such acceptance of the proposition, find for defendants.”
It is observed that in calling the attention of the jury to the facts from, which an acceptance of the offer to subscribe by the City might be inferred, the judge makes no allusion to the proof that the President of the Gas Co. was present when the resolution was adopted by the Mayor and Aldermen, and that he then orally accepted the offer of subscription on behalf of the Gas Co., nor to the fact proven, that the City was entered as a stockholder on the stock-book of the Gas Co. Although it is true that the' acceptance of the offer by the President was not binding on the Company from the simple act of accepting by the President, yet if that act was afterward adopted by the Gas Co., and ratified, it was competent for the jury to look as well to the fact that the City was-enrolled as a stockholder on the stock-book of the Gas Co., as to the fact that the Gas Co. had collected and received $3,000 from the City as payments on the stock, in. determining whether the Gas Co. had accepted the offer or not. In this view, if the court erred, the error was in favor of the defendant.
It is well settled that a municipal corporation can not, by a subsequent ratification, make good the act of an agent which they could not, in the first instance, have directly empowered him to perform. Abbott’s Dig. Corp., 674; 40 N. H., 230; 2 Den., 110; 5 Den., 567.
The acts, doings, and declarations of individual *542 members of a corporation, unsanctioned by the body, are not binding upon it. But inferences may be drawn from corporate acts tending to- prove a contract or promise, as well as in the case of an individual; and a vote is not always necessary to establish such contract or promise. 12 Wheat, 64-72; 14 Johns, 118; 1 Pick., 197. In the last named case the same persons composed two corporations, and passed a vote as members of one of them, proposing to enter into a contract with the other; and the conditions of such proposals' were partially executed by both corporations, without’ any corporate vote on the subject. Held: That an acceptance of the proposal might be inferred from such corporate acts only.
In the case of the M. & O. R. R. Co. v. Yandall, 5 Sneed, 296, the defendant, at a public meeting, had ordered his name to be entered on a subscription list for one share' of stock. This was done at a public meeting in Trenton. The list containing defendant’s name was handed over to the agent or officers of the Corporation, and the name was entered on the books of the Company, and regular calls made on him as a stockholder. Upon these facts this Court said: It was an agreement in writing to take the. amount of stock subscribed; that is, the defendant obligated himself to pay, and for which the charter made him a stockholder. The certificate for one share to which he was entitled would be evidence of this, but that could only be demanded after the money had been fully paid. His right to the stock would be as good without as with the certificate. It may *543 be true tbat tbe subscription was made upon a voluntary movement of the people, and not to an authorized agent of the Corporation; and if that were so, there would be nothing needed to make it binding but its adoption by' the plaintiff, and that was done in this case. The entry of the name of defendant upon the stock-book of the Company was a sufficient act for that purpose, and closed the contract by which defendant became bound to pay.
From the authorities referred to it may be laid down that when a corporation or an agent' thereof does an act or makes a promise that is forbidden by its charter, or is not authorized thereby, either expressly or by fair implication, the act or promise is a nullity, and can not be made binding by a subsequent ratification. But if the corporation has the power, either by express grant or by fair implication, to do the act or make the promise, and it is done or made defectively, then a subsequent ratification would make the act or promise binding.
In the case before us, as we have seen, that the Corporation had the power, under its charter, to procure a supply of gas by subscribing for stock in a gas company, but the power was exercised defectively, if .the President of the Gas Company was not authorized by his Corporation to accept the offer to subscribe made by the City. To show either that he was authorized to accept, or if he was not, that the Gas Company afterward accepted or ratified his oral acceptance^ it was competent to prove such circumstances as would enable a jury to determine whether *544 the offer was accepted or ratified or not. To this end proof that the President of the Gas Company was present and orally accepted the offer on behalf of the Company; that the City of Memphis was entered as a stockholder on the stock-book of the Gas Co.; that the official books of both Corporations contained accounts indicating a recognition of the subscription as valid by both; that payments on the stock had been made by the City and received by the Gas Company, and that the President of the Gas Company had tendered to the City a written recognition of the acceptance by the Gas Co. of the subscription by the City, these were all legitimate circumstances proper to be submitted to the jury in determining the question of acceptance or ratification.
There was, therefore, no error in the court below in permitting testimony as to the several circumstances enumerated to go before the jury on the question of acceptance or ratification; nor was there error in declining to give the several instructions asked for which looked to an exclusion of this testimony; nor can we say that the proof was not sufficient to warrant the jury, to find that the offer of subscription was accepted by the Gas Company.
The judgment is, therefore, affirmed.

 Case cited: M. & O. R. R. Co. v. Yandal, 5 Sneed, 296.