82 PEOPLE ex rel. CONTENT *v.* METROPOLITAN R. CO.

First Department, December Term, 1881.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. NOAH CONTENT, Appellant, *v.* THE METROPOLITAN ELEVATED RAILWAY COMPANY and THE CENTRAL TRUST COMPANY OF NEW YORK, Respondents.

*Contract made between two corporations — stockholders of the companies cannot enforce the provisions in it — Power of the board of directors.*

By the terms of a lease, made May 20, 1879, by the Metropolitan Railway Company to the Manhattan Railway Company, the latter guaranteed an annual dividend of ten per cent on the capital stock of the former company, the guaranty to be performed by paying to the former company quarterly an amount sufficient to pay the said dividend. The Manhattan company also agreed to execute a guaranty to that effect upon the certificates of stock of the Metropolitan company, and to renew such guaranty upon all certificates issued in place of such as might be surrendered and canceled.

Thereafter, and in October, 1881, an agreement was made by and between the two companies, reducing the amount to be contributed by the Manhattan company to a sum only sufficient to pay six per cent per annum, instead of ten per cent, upon the stock of the Metropolitan company.

Thereafter the relator, who had purchased certificates of the stock of the Metropolitan company, containing a guaranty of the Manhattan company for the payment of a sum equal to ten per cent on the capital stock of the former company, applied for a *mandamus* to compel the Metropolitan company to issue to him new certificates containing the same guaranty.

*Held,* that the lease and the agreements therein contained were made wholly and exclusively between the two companies.

That the stockholders, being neither parties to the contract nor in privity with either of the parties thereto, had no rights therein, except such as the company issuing the stock might itself have.

That the companies had power to modify and change the contract, as they might deem necessary and proper.

That, in the absence of any evidence to the contrary, the boards of directors of the two companies had power to make such alterations.

That the application for a *mandamus* should be denied.

APPEAL from a judgment denying an application for a peremptory writ of *mandamus*, entered upon an order made upon a hearing had upon the return to an alternative writ.

The relator was, on October 22, 1881, the owner of certificates of stock of the Metropolitan Railway Company, issued in June of that year to other persons, and subsequently purchased by the

PEOPLE ex rel. CONTENT v. METROPOLITAN R. CO.    83

FIRST DEPARTMENT, DECEMBER TERM, 1881.

relator.   He surrendered them to the company, and sought to compel it to issue new certificates containing a guaranty similar to that contained in the certificates surrendered.

*Zabriskie* and *Nash*, for the appellant.

*David Dudley Field*, for the respondents.

DANIELS, J.:

The writ was issued to require the Metropolitan Elevated Railway Company to issue, or cause to be issued, to the relator, certificates for 300 shares of its capital stock, containing a statement of the guaranty of the Manhattan Railway Company, of the same tenor and effect as that made upon the certificates for the same stock surrendered by him.

The statement desired to be obtained was provided for in a lease made by the Metropolitan Railway Company and the Manhattan Railway Company on the 20th of May, 1879.

The validity of this lease and the power to make it has not been drawn in question in this case, and for that reason it will be assumed to have been a legal and valid demise of the property and railway of the lessor.

By its terms the lessee, the Manhattan company, guaranteed an annual dividend of ten per cent on the capital stock of the lessor, the Metropolitan Railway Company.

It was provided that this guaranty should be performed by the payment to the Metropolitan company of $650,000 in equal quarterly payments, and the Manhattan company should execute, in proper form, a guaranty to that effect upon the certificates of the stock of the Metropolitan company, and as such certificates were submitted for cancellation and reissue, it would, upon the request of the owner, renew such guaranty upon all such reissued certificates.   It was also provided by another instrument made upon the same day, that the Manhattan company, in case it should elect to declare a dividend of more than ten per cent on its own capital stock, would pay to the Metropolitan company a sufficient sum to enable it to make as large a dividend, in excess of ten per cent, as should be declared on the stock of the Manhattan company.

By another agreement made on the 22d of October, 1881, the clause last mentioned was in terms released and discharged by the Metropolitan company, and by that agreement the annual amount to be contributed by the Manhattan company was so far reduced as to supply the means only for a dividend of six per cent upon the stock of the Metropolitan company. To this extent the latter company proposed to make a statement upon the certificates of stock to be reissued to the relator. The change by doing so would be from ten to six per cent. The relator declined to accept a statement of that nature, deeming himself entitled to the certificate mentioned in the original lease. And in support of his right to such certificates reliance has been placed upon the authorities sustaining the principle that where one party makes a promise to another for the benefit of a third, the latter is at liberty to enforce such promise. But these cases maintain this proposition only so far as to entitle the party who is intended to be benefited by the promise to enforce it when it is to be performed directly with him. Such was the nature of the promise upon which *Lawrence* v. *Fox* (20 N. Y., 268), was decided. It was a promise by the defendant founded upon a consideration moving from the person to whom it was made to pay a sum of money directly to the plaintiff in the action. And for that reason it was held sufficient to entitle him to maintain the suit. *Burr* v. *Beers* (24 N. Y., 178), *Hutchings* v. *Miner* (46 id., 456), and *Hand* v. *Kennedy* (83 id., 149) are cases of the same description. In *Garnsey* v. *Rogers* (47 N. Y., 233) it was stated that the rule had not gone so far as to hold that every promise made by one person to another, from the performance of which a third would derive a benefit, as to give a right of action to a third party, he being neither privy to the contract or the consideration. To entitle such a party to an action, the contract must have been made for his benefit; he must be the party intended to be benefited. And it is added that all that *Lawrence* v. *Fox* decided was, that where one person loans money to another upon his promise to pay it to a third party to whom the lender is indebted, the person to whom the money is to be paid may maintain an action, without proving a promise to himself from the party receiving the money. (Id., 240.) The same point was also considered and held in *Vrooman* v. *Turner* (69 N. Y., 280, 284). In the cases of *Kent*

v. *Quicksilver Mining Co.* (12 Hun, 53; 78 N. Y., 159), and *Boardman* v. *Lake Shore, etc., Railway Company* (84 N. Y., 157), the promise was made to pay the party owning the stock. That was its substance and effect certainly, and for that reason the party designed to be included within the terms of the promise was allowed to enforce it by action. This principle seems to have been somewhat extended in *Opdyke* v. *Pacific Railroad Company* (3 Dillon, 55), but so far as it may have transcended the limits imposed upon it by the courts of this State, that authority manifestly cannot be followed. *Hartman* v. *Greenhow* (102 U. S. Rep., 672) in no manner sustains such an extension of this principle, for no more was decided by it than had previously on several occasions been held to be the law applicable to such agreements by the decisions made in this State.

The contract contained in the original lease upon which the relator's application was based was not in any form made with the persons owning stock in the Metropolitan Railway Company. It was an agreement, on the contrary, wholly and exclusively between the corporations themselves.

The stock was referred to only for the purpose of indicating the sum to be paid, and the amount at which that would permit the dividends to be made by the Metropolitan Railway Company. And the statement, which it was provided should be made upon the certificates of the stock themselves, was to consist only of a statement of the effect of the agreement as it had been made between the Manhattan and the Metropolitan Elevated Railway Companies. When made as it was provided for, it would in no manner enlarge the obligations of either company, or the right of the owner of the stock, for the money which it was provided should be paid, would still be paid over to the company itself, and constitute a fund in its hands out of which to make its dividends upon the stock. The contract was wholly and exclusively between the railway companies. It was to be wholly performed by what should afterwards transpire between these companies. The owners of the stock were neither parties to it nor in privity with either of such parties. Their rights were accordingly limited to what might be the legal obligations of the company itself issuing the stock, and they could in no form maintain an action against the Manhattan Railway

**86    PEOPLE ex rel. CONTENT v. METROPOLITAN R. CO.**

First Department, December Term, 1881.

Company to recover for non-payment of dividends by the Metropolitan company, on the ground that the former had failed to pay over the stipulated sums to the latter. The statements indorsed on the face of the certificates issued by the Metropolitan company were in no sense contracts, but at most a notice of a condition of things respecting the property of the company and of the source from which they expected dividends to be derived. Their demands, whatever they might be, were wholly against that company. In this respect the article in the lease, relied upon in support of the relator's application, materially differs from the contracts which were made the foundation of the actions in the cases to which reference has been made. And this distinction renders the principle which they have established entirely inapplicable to the present controversy. The consequence is that as this contract was one existing wholly and solely between the corporations who were the parties to it, they could modify and change it as circumcumstances indicated that to be necessary or proper. The same power existed over it that corporations have over other contracts and demands, by whose terms they may be entitled to be benefited. When circumstances arise indicating an inability on the part of the other contracting party to fulfill the terms of the agreement, a compromise, or adjustment, on a basis dispensing with full and complete performance, is within the power of the corporation intended to be benefited by the obligation. And that power may always be exercised, where no restraint appears to have been imposed upon it, by the board of directors having the authority to manage the affairs of the corporation. No such restraint was made to appear in the present instance, and it was shown as a matter of fact that the directors of the two corporations had so far made use of this authority to change the original terms of the lease given for the property of the Metropolitan Railroad Company, as to make this reduction in the amount required to be paid for the use of the property by the Manhattan Railway Company. Before that was done an emergency had arisen which appeared to render such action necessary, for the Manhattan company had proved to be unable to meet the obligations which it had assumed, and for that reason all the property had been placed in the hands of two receivers, and it had become entirely disabled from performing

its obligations so far as it had undertaken to pay such a sum of money as would be sufficient to make a dividend of ten per cent upon the stock of the Metropolitan Railway Company. It was in that condition of its affairs that the companies were called upon to act, and from the consideration which was then given to the subject, this reduction in the amount expected to be realized was made. The management of the affairs of these corporations may be assumed to have been vested in the directors, for that is the usual form of corporate charters existing under the laws of this State. No other object is to be attained by the choice of a board of directors, and when such a board is in existence the power to manage the concerns of the corporation is deemed to be vested exclusively in it, and the corporations have no right to interfere with it. (*McCullough* v. *Moss*, 5 Denio, 567–575; *Hoyt* v. *Thompson*, 19 N. Y., 207.) And the power so vested in the board may be exercised by a majority of the members. (2 R. S. [6th ed.], 391, § 6.)

No reason appears for supposing that the directors of the companies were actuated by any improper motives in making this compromise or adjustment of their affairs. But in the emergency which had arisen their action seems to have been induced by the desire to do the best which the circumstances permitted to be accomplished. The agreement which was made was within the limits of the power confided to them, and it was warranted in the judgment which they were required to exercise, by the circumstances which existed. This result, that the adjustment should be sustained, follows from the authority possessed by them over subjects of this nature, and it was recently so held in *Flagg* v. *Manhattan Company et al.* by the United States Circuit Court; and the fact that the relator may have acquired title to his stock under a different expectation created by the clause relied upon in the original lease, or the statement made upon the certificates of the stock purchased by him, in no manner abridged the exercise of this authority. He was chargeable with knowledge of the existence of the agreement under which the statement itself was made, and of the form in which this provision had been made a part of the lease. By consulting that he would have discovered that the obligation for the payment of the money was entirely to the Metropolitan company, and as a consequence of that fact it was subject to future control and modification, as circumstances subse-

quently arising might indicate that to be advisable and proper. To that extent the law charges him with knowledge of the terms of the instrument, even if he did not in fact consult it, and of the power necessarily confided to the directors of the corporations over it. He consequently, although he has been disappointed in his expectations, has no legal right to complain of what has taken place, and must be held to be bound by the action of the directors to whose conduct and management the corporate affairs of the companies had been intrusted.

It has been conceded in the case that the proper proceeding to be taken by the relator for the assertion of his rights was that by way of *mandamus*.

For that reason, under this concession of the parties, the propriety of this remedy is not, and will not be considered. What has been desired, and all that has been desired, is that the rights and obligations of the parties to the controversy shall be determined. It must, therefore, be held that the manner in which this controversy has been brought before the court was in all respects a proper one. It is not now disposed of upon any mere ground of discretion, but because the relator himself, upon the facts as they have been shown, has established no legal or equitable rights whatever to any relief. And in that view the case is one which can probably be reviewed by the Court of Appeals, notwithstanding what has been said in *People ex rel. Lunney* v. *Campbell* (72 N. Y., 497). The determination is a final judgment against the relator, adverse to the right asserted by him in the case, and for that reason subject, as such judgments usually are, to the review of an appellate tribunal. (*Hartman* v. *Greenhow*, 102 U. S., 672.)

The appeal which has been taken cannot be sustained, and the judgment should be affirmed, with costs.

Davis, P. J., and Brady, J., concurred.

Judgment affirmed, with costs.